## LUFKIN LAND & LUMBER COMPANY v. W. S. NOBLE, ET AL.

### Decided March 23, 1910.

**1.—Appeal—Defective Assignment of Error—Practice.**

An appellee is entitled to be apprised by appellant's brief of the precise issue he must meet; when therefore it can not be determined from the assignment of error, the propositions, the statement nor the authorities in appellant's brief whether appellant objects to a finding of fact by the trial court, or to the failure to make the contrary finding on the ground that there was no evidence to sustain the court's finding, or that the undisputed evidence required the contrary finding, or that the finding is against the great weight and preponderance of the evidence, the assignment is not entitled to consideration.

**2.—Taxation—Valuation—Discrimination.**

In a suit to enjoin the collection of taxes on the ground that the Commissioners' Court had assessed the property of resident taxpayers at two-thirds its value, but had assessed the property of plaintiff, a nonresident, at its full value, the plaintiff should have required of the court specific findings, first, as to whether the property of other persons was assessed at two-thirds its value; and second, whether in fact plaintiff's property was assessed at a higher rate in proportion to its fair cash market value. A simple finding by the court that plaintiff's property was worth as much or more than the value placed upon it, does not decide the issue.

**3.—Same—Valuation—Evidence.**

In a suit to enjoin the collection of taxes upon a large body of timbered land consisting of many different tracts, on the ground that it had been overvalued by the Commissioners' Court, it was not reversible error, under the circumstances of this case, notwithstanding the provisions of article 5088, Rev.

Stats., to permit witnesses to testify as to the value of the timber per thousand feet on the body of land taken as a whole, the case having been presented and tried upon the issue of the alleged over-valuation of the entire body of land.

### 4.—Same—Irrelevant Evidence.

The issue being whether or not plaintiff had been discriminated against in the valuation of his lands for taxation by the Commissioners' Court, testimony as to an agreement among the members of the court to stand by their valuation of property regardless of evidence, was irrelevant to any issue in the case, although it had been shown that said court had refused plaintiff's request to reduce the valuation of his lands.

### 5.—Appeal—Defective Assignment.

An assignment of error can not be considered as a proposition when it embraces four separate and distinct matters having no relation to each other in which it is alleged the court erred.

### 6.—Taxes—Tender—Interest.

A tender of less than the entire amount of taxes due will not stop the accrual of interest on the amount tendered. A tax collector can not be required to accept a part of the taxes due upon the taxpayer's claim that that was all that was due.

### 7.—Appeal—Cross Assignment of Error—Rule 101.

A cross assignment of error can not be considered when it does not appear in the transcript and there is no certificate of the clerk that a copy of appellee's brief, in which it appears, was filed with the clerk as required by rule 101 for the District and County Courts.

Appeal from the District Court of San Augustine County. Tried below before Hon. W. B. Powell.

*B. P. Finley, E. J. Mantooth* and *Davis & Davis,* for appellant.— If appellant's lands were valued higher than the lands of resident land owners in San Augustine of equal value, and the board of equalization acted arbitrarily, or fraudulently, or wilfully, in the valuation of its property, their act or acts are void, for that taxation, as applied to appellant's property, is not equal and uniform and imposes an unjust burden on its property, and is an unlawful discrimination against appellant. Constitution of Texas, art. viii, secs. 1 and 2; Cummins v. Merchants Natl. Bank of Toledo, Ohio, 101 U. S., 153; Hills v. Exchange Bank, 105 U. S., 319; Evansville Bank v. Britton, 105 U. S., 322; Dundee Mor. & Trust Co. v. Charlton, 32 Fed., 192; Johnson v. Holland, 17 Texas Civ. App., 210; Pelton v. Commercial Natl. Bank of Cleveland, Ohio, 101 U. S., 143.

If the board of equalization accepted resident property at 25 percent to 50 percent, or less than two-thirds of its value, and raised plaintiff's lands to what they called the fair value (which plaintiff claims was more than the fair market value of said lands), it is a legal fraud, whether the acts of said board were done knowingly or in ignorance of the true value of plaintiff's lands. Cummins v. Merchants Natl. Bank of Toledo, Ohio, 101 U. S., 153; Hills v. Exchange Bank, 105 U. S., 319; Evansville Bank v. Britton, 105 U. S., 322; Dundee Mor. & Trust Co. v. Charlton, 32 Fed., 192; Constitution of Texas, art. viii, secs. 1 and 2.

Each separate parcel of real property shall be valued by itself and not in the aggregate with all the lands of appellant. Sayles' Civ. Stats., arts. 5088, 5120; Clegg v. State, 42 Texas, 608; State v. Baker, 49 Texas, 763; Edmonson v. City of Galveston, 53 Texas, 157; Schleicher v. Gatlin, 85 Texas, 273; McCombs v. Rockport, 14 Texas Civ. App., 561; Harris v. City of Houston, 21 Texas Civ. App., 433; City of San Antonio v. Raley, 32 S. W., 184; Jodon v. City of Brenham, 57 Texas, 657; Hersey v. Board of Supvs. of Barron County, 37 Wis., 75.

Where the board of equalization in raising or fixing the value of property acts from corrupt, fraudulent or arbitrary motives, and in violation of the laws of the State, whether constitutional or statutory, their acts are voidable at the suit of the party aggrieved. Johnson v. Holland, 17 Texas Civ. App., 210; Milwaukee Iron Co. v. Hubbard, 29 Wis., 51; Andrews v. King Company, 22 Am. St. Rep., 136; Cooley on Taxation, 1st ed., 157; Judson on Taxation, pars. 292-296-463; Taylor v. Louisville & N. Ry. Co., 31 U. S. C. C. A., 537.

The plaintiffs having tendered to the defendants before the 31st day of January, 1907, and the 31st day of January, 1908, the taxes due upon its property as valued and rendered by it, said renditions being two-thirds of the fair market value of its property, for the years 1906 and 1907, and afterwards said amounts having been paid to the tax collector of San Augustine County by order of the court at the suggestion of the plaintiff herein, the judgment for interest on the amount tendered was error for which the judgment should be reversed and remanded. Riley v. McNamara, 83 Texas, 11; Louisville & N. Ry. Co. v. Commonwealth, 94 S. W., 655.

*S. W. Blount,* for appellees.

REESE, ASSOCIATE JUSTICE.—This is a suit instituted by the Lufkin Land & Lumber Company against the tax collector and the county commissioners of San Augustine County to enjoin the collection of taxes assessed against plaintiff on its property for the years 1906 and 1907. The case was tried without a jury, and from a judgment for defendants plaintiff appeals. The trial court prepared and filed conclusions of fact and law which are in the record.

For the year 1906 appellant owned and rendered for taxation in San Augustine County about 50,000 acres of land, mostly timbered, and the timber on about 10,000 acres. The land consisted of 140 separate tracts, and the timber was on 39 separate tracts. For the year 1907 it owned and rendered for taxation 160 separate tracts of timber land, in the aggregate 51,678 acres, and the timber on 43 tracts aggregating 10,199 acres. In its rendition each tract of land and the timber on each tract was valued separately. The total valuation for 1906, as rendered by appellant, was $380,549, and for 1907 was $390,905. The Commissioners' Court, sitting as a board of equalization, raised the value for 1906 to $804,600, and for 1907 to $787,938. This increase was arrived at by raising the value of each separate tract, uniformly, about one hundred percent. Notice was given to appellant; but at the hearing the board refused to recede from these

valuations. The gravamen of appellant's complaint is that the Commissioners' Court arbitrarily, wilfully, knowingly and fraudulently valued its land, and each tract thereof, at more than its fair cash market value, and in placing this value on them wilfully, knowingly and fraudulently discriminated against the appellant in favor of resident owners of land. That the court established a rule that lands would be valued for taxation at two-thirds of their fair cash market value, and that all lands of resident owners were valued at less than that proportion of their cash market value, while appellants' lands were valued at more than their cash market value, all of which it is alleged was knowingly, intentionally, wilfully and fraudulently done.

There was a suit in the United States Circuit Court having the same purpose of this suit as to the taxes for 1906, in which appellant tendered and paid into court the amount due for taxes for that year on the land at its valuation. Upon the dismissal of that suit, the clerk of the court was ordered to pay over to the tax collector of San Augustine County the amount so paid to him by appellant, amounting to $3,539.15, which was accordingly done on December 15, 1908. Appellant also made a tender to the tax collector of the taxes due for 1907 on their rendition, amounting to $3,757.55, before January 31, 1908, which was refused. In its petition they again offer to pay this amount, but no money was actually tendered and paid in court. The trial court, on defendants' cross-action, rendered judgment for the amount of taxes still due for 1906 with legal interest up to the date of the payment to the tax collector on the taxes for that year as aforesaid, and also for the taxes for 1907 with legal interest from the date they were due to the date of the judgment, with foreclosure of tax lien on the land and timber, but refused to assess the ten percent penalty.

The evidence established that the board of equalization raised the value of each tract of appellant's lands, with a few unimportant exceptions of some "cut over" lands, to about double the value at which they had been rendered, the aggregate raise being, on the 1906 rendition, from $380,549 to $804,600, and for the 1907 rendition, from $390,905 to $787,938.

There was a good deal of testimony as to the fair cash market value of the lands as compared to the value placed upon them by the board, and upon the issues of wilful and intentional discrimination. Upon these issues the evidence was very conflicting. The evidence was sufficient to establish appellant's contention as to both of these issues, but on both the court found against ·their contention.

The first assignment of error complains of the finding of fact that the tax rolls of San Augustine County are duly made up and approved and authenticated for the year 1906, showing taxes due by appellant of $7,966.29 for lands and timber and $276.32 for personal property; and also for 1907 showing taxes due, $7,755.40, for that the testimony shows that the taxes were not lawfully assessed, in that appellant's property was knowingly, wilfully and fraudulently assessed above its fair cash market value, etc. Appellant entirely misunderstands the purport of this finding, which does not go, nor is it intended to go,

to the question of overvaluation nor discrimination, but only to the regularity of the court's action. There is no merit in the assignment.

The second and third assignments are as follows:

"The court erred in its conclusions of fact, in the second paragraph of such findings, in not finding that the action of the board of equalization in raising the taxes of plaintiff's lands 100 percent and above, was a discrimination against plaintiff and its property in favor of resident tax payers of San Augustine County; and in not finding that the values rendered by the said board of equalization were above the fair cash market value of said property for the years mentioned; and in not finding that the value of plaintiff's lands for said years should have been assessed at two-thirds of its fair cash market value, instead of being assessed at its fair cash market value; and in not finding that the acts of the board of equalization for said years in raising the value of plaintiff's property were knowingly, arbitrarily and fraudulently made by the said Commissioners' Court, and were therefore void."

"The court erred in its third paragraph of its conclusions of fact, in not finding that the acts of the board of equalization in raising the property values of plaintiff were knowingly, arbitrarily and fraudulently a discrimination against plaintiff and its property in favor of resident tax payers of San Augustine County, and that said raises were above the fair cash market value of said lands for said years, and was more than two-thirds of the fair cash market value of said lands for said years, and that the acts of the said board of equalization in such raises were a fraud upon plaintiff, and were, therefore, void."

Two propositions are stated under these assignments as follows:

"If appellant's lands were valued higher than the lands of resident land owners in San Augustine of equal value, and the board of equalization acted arbitrarily, or fraudulently, or wilfully, in the valuation of its property, their act or acts are void, for that taxation, as applied to appellant's property, is not equal and uniform and imposes an unjust burden on its property, and is an unlawful discrimination against appellant."

"If the board of equalization adopted a standard of values for taxation of two-thirds of the value of all property situated in San Augustine County for the years 1906 and 1907, and accepted all resident owner's property on a basis of two-thirds of its value, and knowingly raised appellant's lands above two-thirds of their value by arbitrary or fraudulent action, or for the purpose of raising revenue for the current expenses of the county, such action on the part of the board is void, and the plaintiff's cause of action is proper and timely."

Assuming that it was the intention of appellant by these assignments to complain of the finding that the court did in fact make, and not of findings that it failed to make, we are not advised by either the assignments or the propositions thereunder of the ground upon which the findings are intended to be attacked. In justice to appellees, who are only called upon to meet the case as it is fairly presented in the brief of appellant, we are in doubt whether these assignments should be considered at all, even with full regard to what is said by the

Supreme Court in Clarendon Land Co. v. McClelland Bros. (86 Texas, 189). Neither the assignments, the propositions, the statement, nor the authorities furnish any information as to whether appellant objects to the finding that was made, or of the failure to make the contrary finding on the ground that there was no evidence to sustain the court's finding, or that the undisputed evidence required the contrary finding; or whether it is contended that the finding is against the great weight and preponderance of the evidence and therefore manifestly wrong. The latter ground of objection would require of appellant, by way of statement, a brief summary of all the evidence on these issues, for only upon such statement could this court judge as to whether the assignments were, on this ground, well taken. But first and foremost, appellees should be apprised by the brief of appellant that they must meet this issue. We can not undertake upon these assignments, supplemented by the propositions, statement and authorities, to pass upon the question as to whether the findings of the court that appellant's property was not overvalued and that there was no discrimination against it, was so against the great weight and preponderance of the evidence as to be manifestly wrong, and to authorize this court to set such findings aside. (Searcy v. Grant, 90 Texas, 97). Both issues were sharply contested. There was a great deal of evidence as to the position and comparative values of appellant's property, and as to whether the Commissioners' Court intentionally discriminated against it, quite sufficient evidence probably upon both, certainly upon the latter issue, to have authorized findings in favor of appellant's contention; but there was evidence sufficient to support the court's findings on both issues. The county judge and each of the four commissioners disclaimed most postively any intention to discriminate against appellant in valuing the property in favor of resident tax payers or in any other way; and with equal positiveness testified that there was in fact no discrimination, intentional or otherwise. Some of them testified that they did not intend to and did not in fact assess appellant's property at its fair cash market value, but at something less than such value. One of them denied that there was any rule or agreement that the court would assess property at two-thirds of its actual cash market value, or that he knew anything about it, although by their answer, introduced in evidence by appellant, it was admitted that there was such a rule adopted. The trial court made no finding as to this point, but merely found that appellant's property was not valued at more than its fair cash market value, and that there was no discrimination against it. There was sufficient evidence to support both findings. The other question, as to where lay the great preponderance of the evidence on these issues, we are not called upon by these assignments to decide. The assignments are overruled.

The thirteenth assignment of error is as follows: "The court erred in its conclusions of fact, as found in the fourth paragraph of its findings, in finding that the values, as placed upon the property of plaintiff for the years 1906 and 1907, was in the aggregate worth on the market as much or more than the value at which same was finally assessed by the said board of equalization, and that each of the several

items of property so owned and so finally assessed by said board of equalization, was of the market value as great as or greater than the value finally placed upon same for each of said years by said board of equalization, as shown by said tax rolls, and that the said assessments for both said years were not higher than the real market value of said property:

"First, because the undisputed evidence shows, and the defendants' answer admits, that the board of equalization for the years 1906 and 1907, adopted as a criterion for assessing all property in said county for said years two-thirds of the fair cash market value of each individual's or corporation's property, and not the full cash value of said property.

"Second, because the undisputed evidence shows that the board of equalization raised the values of plaintiff's property above plaintiff's rendition more than 100 percent at the June meetings of the said board for 1906 and 1907, in the absence of plaintiff, and without any personal knowledge of the values of plaintiff's property, and in the absence of any evidence by any person who knew anything about the classification and values of plaintiff's property.

"Third, because at the July sessions of the board of equalization for 1906 and 1907 the plaintiff offered several persons who were familiar with the classification and values of each tract of plaintiff's property, who testified that the renditions as made by the plaintiff for the years 1906 and 1907, were two-thirds of the fair cash market value of plaintiff's property for said years; and the said board of equalization failed and refused to offer any testimony for either of said years of 1906 and 1907 at said hearing to contradict or disprove the testimony offered by the plaintiff.

"Fourth, because the testimony, on the trial of the case at bar, by witnesses who were familiar with the classification and value of each of plaintiff's tracts of lands, offered by the plaintiff, shows that the renditions as made by plaintiff for the years 1906 and 1907 were, on the first day of January of said years, two-thirds of the fair cash market value of said lands.

"Fifth, because the testimony produced at the trial of this case showed that the members of the board of equalization knowingly, arbitrarily and fraudulently raised the values of plaintiff's lands above two-thirds of their fair cash market value for said years 1906 and 1907 for the fraudulent purpose of making the property of plaintiff bear an unjust burden of taxation, and thereby discriminating against plaintiff and its property in favor of resident property owners of said San Augustine County, and their acts thereby became void."

Assuming, for the purpose of passing upon this assignment, that the pleadings of appellant heretofore referred to established indisputably that the Commissioners' Court had adopted a rule that all property should be assessed at two-thirds of its value (as to which none of the commissioners were questioned or testified on this trial except one, who denied it), in order to raise the question as to whether appellant was discriminated against it should have required of the court specific findings, first, as to whether for the years mentioned the property of other persons was assessed for taxation according to such rule; and

second, whether in fact appellant's property was assessed at a higher rate in proportion to its fair cash market value. If such findings had been in the negative they would have been subject to attack as being contrary to the evidence or against the great preponderance of the evidence and manifestly wrong. The court simply finds that appellant's property was worth as much or more than the values placed upon it. We can not assume from the findings made that the court would have found that the values placed upon it were more than two-thirds of its fair cash market value if it had been called upon to find upon this specific question. Much evidence was introduced to show, and which if true unquestionably showed, that the Commissioners' Court acted arbitrarily and without proper information, and seemingly without any desire for proper information, in raising appellant's property as it did. The question really was first whether it was overvalued, or whether the court discriminated against appellant as complained of, and these facts had to be established before the court trying this case. If such overvaluation had been shown, or such discrimination between appellant and resident tax payers, evidence as to what occurred before the Commissioners' Court as detailed by the evidence would have been admissible to show, and was, we may add, sufficient to show that that court acted wilfully or arbitrarily and intentionally in such overvaluation and discrimination; but first the overvaluation or discrimination must have been shown by the preponderance of the evidence on the trial in the District Court, and that question must be here presented by proper assignments of error. The assignment of error can not be sustained.

What we have said disposes also of the fourteenth assignment of error, which is overruled.

Assignments of error four, five, six and seven complain of the action of the court in admitting, over appellant's objection, the testimony of certain witnesses as to the value of the pine timber per thousand feet on the body of lands belonging to appellant, taken as a whole. The witnesses were testifying with reference to a map showing the entire body of lands in question, and the location of the Cotton Belt Railroad with reference thereto. Objection was made that the lands should not be valued in a lump, but each tract separately, which objection was overruled with the remark from the court that "The valuation of this property taken as a whole is the true estimate; the true valuation of the whole property is before the court and not an isolated tract." Each witness then gave his estimate of the value per thousand feet of the timber on the entire body of land. The objection to the evidence is presented by proper bills of exception.

The case was tried by the court without a jury, and the issues to be determined were whether the Commissioners' Court had wilfully and intentionally assessed appellant's property at more than its fair cash market value, or whether it had wilfully and intentionally discriminated against appellant in valuing its property at its fair market value, while the property of other tax payers was intentionally valued at two-thirds or a less proportion of its market value. Of course in determining these issues the true market value of the land was an important element, and any evidence that tended to show

this was admissible. If the fact that there was a large body of the land consisting of different tracts, though not in a solid body, affected the value of the timber on the land, which necessarily affected the value of the land, such fact might properly be considered. The witnesses, testifying with reference to the location of the land, and probably in view of the fact that the different tracts composed a large body of timber lands, merely stated, in answer to the questions propounded, that the timber on the land was worth from $2.00 to $2.50 per thousand feet. In view of the provisions of the statute (Rev. Stats., art. 5088) the court was in error in the statement that the true value of the whole property was the issue, and not that of isolated tracts. Still, from the way in which the case was presented, the case turned largely upon the alleged overvaluation and discrimination with regard to the entire body of land. At any rate we think the testimony was admissible, not as fixing the value, but for the purpose of determining the value of each tract, as to which the value of the timber was an important element; and it can readily be seen that the fact that there was a large number of timbered tracts in relatively close proximity to each other and near to a railroad, would affect the value of the timber upon each tract. We are of the opinion that the assignments should be overruled.

There was no error in refusing, over the objection of appellant, to allow the witness Parker to testify as to an agreement between the commissioners in 1904 to stand by their valuation of property regardless of evidence, even though some of the commissioners in 1906 and 1907 were members of the court in 1904. The testimony was not relevant to any issue in the present case. There is no merit in the ninth assignment presenting the question.

In view of the character of the issues presented, involving not so much the ascertainment of the exact value of the lands as the question of their proximate value on the issue of whether the action of the commissioners was intentionally, knowingly and wilfully wrong, we can not say that the testimony referred to in the tenth, eleventh and twelfth assignments of error presents any ground for reversal, especially in view of the fact that the case was tried by the court, and there was sufficient evidence outside of that objected to to establish the facts which this evidence tended to prove. (Gillis v. Rosenheimer, 64 Texas, 246-7; Smith v. Hughes, 23 Texas, 250.)

The fifteenth assignment embraces four separate and distinct matters in which the court is alleged to have committed error, having no relation to each other. Clearly, if the assignment should be considered at all it can not be considered as a proposition, as attempted by appellant. Appellant states under it also two further propositions. The first assumes as established the sharply contested facts upon which the case rests for appellant and upon which the court found against it, and can not be sustained. The second of these propositions questions the right of the court to charge appellant with interest, after such tender, on the amount of its taxes which it admitted to be due and which it had tendered to the tax collector, but which that officer had refused to accept. In this, we think, the court did not err.

The tax collector was not required to accept a part of appellant's taxes, upon appellant's claim that that was all that was due.

We are of the opinion that there is no error in the record requiring a reversal, and that the judgment should be affirmed, and it is so ordered.

Appellees have presented in their brief a cross-assignment of error to the action of the court in refusing to charge appellant with the ten percent penalty for failure to pay its taxes when due. This cross-assignment is not so presented that it can be considered by us, and appellant makes objection to such consideration. This cross-assignment does not appear in the transcript, and it does not appear by certificate of the district clerk that a copy of the brief of appellees in which it appears, was filed with the clerk of the District Court as required by rule 101. (Rules for District and County Courts.)

*Affirmed.*

Writ of error refused.